Steven D. Hurd
Joshua S. Fox
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
Tel. 212.969.3000
Fax 212.969.2900
shurd@proskauer.com
jfox@proskauer.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

EDWIN ROMERO, *et al.*, on behalf of a class of
employees employed with the Manhattan and Bronx
Surface Transit Operating Authority, MTA
Headquarters, and Metropolitan Transportation
Authority

                                    Plaintiffs,

               v.

MANHATTAN and BRONX SURFACE TRANSIT
OPERATING AUTHORITY, MTA HEADQUARTERS
(a/k/a MTA INFORMATION TECHNOLOGY) and
METROPOLITAN TRANSPORTATION
AUTHORITY

                                  Defendants.

Case No. 1:21-cv-04951-LJL

-----------------------------------------------------------------------x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR FEDERAL RULE
OF CIVIL PROCEDURE 12(b)(6) MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ....................................................................................................1

FACTUAL BACKGROUND ......................................................................................................3

I.      THE PARTIES...................................................................................................................3

      A.    Defendants ............................................................................................................3

      B.    Plaintiffs ...............................................................................................................4

II.     RELEVANT HISTORY OF COMPUTER AND STAFF ANALYST TITLES..................5

      A.    MaBSTOA Computer And Staff Analyst Titles ...................................................5

      B.    NYCTA Computer and Staff Analyst Job Titles ...................................................6

PROCEDURAL HISTORY........................................................................................................7

I.      *ROMERO I* (Case No. 1:19-cv-00694-JGK) ..........................................................7

II.     *ROMERO II* (Case No. 1:21-cv-04951-LJL)......................................................10

LEGAL STANDARD................................................................................................................10

LEGAL ARGUMENT ..............................................................................................................12

I.      PLAINTIFFS' FLSA CLAIMS SHOULD BE DISMISSED AS A
MATTER OF LAW ........................................................................................................12

      A.    Plaintiffs Have Failed To State A Claim For Unpaid Overtime
Under FLSA........................................................................................................12

      B.    Plaintiffs' FLSA Claims Are Barred Under The Applicable
Statute of Limitations.........................................................................................17

II.     PLAINTIFFS' FEDERAL AND STATE EQUAL PROTECTION CLAIMS
ARE BARRED AS A MATTER OF LAW AND SHOULD BE DISMISSED.................18

      A.    Plaintiffs Have Failed To Establish A *Prima Facie* Claim Of Unequal
Pay Under The Federal And State Equal Protection Clauses ...................................18

B.    Plaintiffs Have Not Sufficiently Pled That They Were
Treated Differently From And Are "Similarly Situated"
to NYCTA Employees ............................................................... 19

C.    Defendants Have Demonstrated That There Is A
Rational Basis For the Alleged Disparity In Salary Ranges ................................... 23

D.    Plaintiffs' Equal Protection Claims Are Barred By Contract ................................... 25

E.    Plaintiffs' Equal Protection Claims Are Barred By Supreme Court
Precedent ........................................................................... 26

III.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ............................ 29

CONCLUSION ............................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................10, 11, 14

*Bein v. Cnty. of Nassau*,
  118 A.D.3d 650, 987 N.Y.S.2d 416 (2d Dep't 2014) ............................................27

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................10, 11, 14

*Bertram v. Metro. Trans. Auth.*,
  No. 13 Civ. 338, 2014 WL 748933 (S.D.N.Y. Feb. 26, 2014) ..............................28

*Bey v. City of N.Y.*,
  No. 99-cv-3873 (LMM) (RLE), 2009 WL 2924429 (S.D.N.Y. Sep. 9, 2009) .......28

*Campbell v. City of N.Y.*,
  No. 16-CV-08719 (AJN), 2017 WL 3206332 (S.D.N.Y. July 25, 2017) ...............14

*Caracciola v. City of N.Y.*,
  No. 95 CIV. 3896 CSH, 1999 WL 144481 (S.D.N.Y. Mar. 15, 1999) ...........20, 21

*Chen v. Major League Baseball Props., Inc.*,
  6 F. Supp. 3d 449 (S.D.N.Y. 2014) .....................................................................10, 11

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
  473 U.S. 432 (1985) ............................................................................................19

*Collins v. Manhattan & Bronx Surface Transit Operating Auth.*,
  62 N.Y.2d 361, 477 N.Y.S. 91 (1984) ..............................................................4, 21

*Conyers v. Rossides*,
  558 F. 3d 137 (2d Cir. 2009) ...........................................................................27, 28

*Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*,
  682 F.3d 1298 (11th Cir. 2012) ...........................................................................28

*Cortese v. Skanska Koch*,
  20-cv-1632 (LJL), 2021 WL 429971 (S.D.N.Y. Feb. 8, 2012) .........................13, 15

*Danese v. Knox*,
  827 F. Supp. 185 (S.D.N.Y. 1993) ......................................................................22

*Dartmouth Review v. Dartmouth Coll.*,
  889 F.2d 13 (1st Cir. 1989)........................................................................20

*DeJesus v. HF Mgmt. Servs.*,
  726 F.3d 85 (2d Cir. 2013)..............................................................12, 13, 14

*Engquist v. Oregon Department of Agriculture*,
  553 U.S. 591 (2008)........................................................................ passim

*Feinberg v. Apple, Inc.*,
  2016 WL 4371746 (S.D.N.Y. Aug. 10, 2016)................................29, 30

*Flaherty v. Giambra*,
  446 F. Supp. 2d 153 (W.D.N.Y. 2006)...................................................25

*Galarza v. Monti*,
  327 F. Supp. 3d 594 (S.D.N.Y. 2018)....................................................20

*Garanin v. NYC Hous. Pres. & Dev.*,
  No. 15 Civ. 3169 (AJN), 2016 WL 1690301 (S.D.N.Y. Mar. 30),
  *aff'd*, 673 F. App'x 122 (2d Cir. 2016)..................................................21

*Goldman v. Belden*,
  754 F.2d 1059 (2d Cir. 1985), *aff'd* 798 F.3d 72 (2d Cir. 2015)...........10

*Harlen Assocs. v. Inc. Vill. of Mineola*,
  273 F.3d 494 (2d Cir. 2001)....................................................................19

*Johnson v. Baker*,
  108 F.3d 10 (2d Cir. 1997)......................................................................11

*Juarez v. Butterfield Catering, Inc.*,
  20-cv-4537 (LJL), 2020 WL 6945944 (S.D.N.Y. Nov. 25, 2020) .........17

*Kearse v. City of N.Y.*,
  No. 17-CV-9982 (JMF), 2018 WL 2059658 (S.D.N.Y. May 1, 2018) ...14

*Knight v. Bratton*,
  48 Misc. 3d 536, 13 N.Y.S.3d 799 (Sup. Ct. N.Y. Cnty. 2015) .............27

*Knight v. MTA-New York City Transit Auth.*,
  No. 1:19-cv-09960 (VSB), 2021 WL 2435577 (S.D.N.Y. June 15, 2021) .......15, 16

*Lundy v. Cath. Health Sys. of Long Island Inc.*,
  711 F.3d 106 (2d Cir. 2013)........................................................ passim

*Matter of Clark v. Metro. Transp. Auth.*,
  46 Misc. 3d 344, 999 N.Y.S.2d 309 (Sup. Ct. N.Y. Cnty. 2013) .........4, 21

*Matter of New Covenant Charter Sch. Educ. Faculty Ass'n v. Bd. of Trs. of State*
    *Univ. of N.Y.*,
    30 Misc.3d 1205(A), 958 N.Y.S.2d 647 (Sup. Ct. Albany Cnty. 2010)..................................27

*McCann v. City of Chicago*,
    968 F.2d 635 (7th Cir. 1992) .......................................................................................25, 26

*Miller v. N.Y.C. Dep't of Educ.*,
    622 F. App'x 38 (2d Cir. 2015) ...............................................................................................27

*Mullen v. City of Syracuse*,
    No. 5:10-CV-1110, 2013 WL 12084511 (N.D.N.Y. Aug. 5, 2013)........................................24

*Murray v. City of N.Y.*,
    No. 16-CV-8072 (PKC), 2017 WL 3531552 (S.D.N.Y. Aug. 16, 2017) .........................14, 15

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
    723 F.3d 192 (2d Cir. 2013)..................................................................................12, 13, 16

*Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. State*,
    336 F. Supp. 3d 50 (E.D.N.Y. 2018) .....................................................................................20

*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,
    898 F.3d 243 (2d Cir. 2018)...................................................................................................29

*Neilson v. D'Angelis*,
    409 F.3d 100 (2d Cir. 2005), *overruled on other grounds by*
    *Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008).....................................................................20

*NYC Managerial Emps. Ass'n v. Dinkins*,
    807 F. Supp. 958 (S.D.N.Y. 1992)..........................................................................................25

*O'Rourke v. Ehsan Food Corp.*,
    No. 19-CV-6162 (LJL), 2020 WL 6894663 (S.D.N.Y. Nov. 24, 2020)..................................18

*Perkins v. 199 SEIU United Healthcare Workers E.*,
    73 F. Supp. 3d 278 (S.D.N.Y. 2014).......................................................................................17

*Progressive Credit Union v. City of N.Y.*,
    889 F.3d 40 (2d Cir. 2018)...............................................................................................11, 23

*Reis v. Manhattan & Bronx Surface Transit Operating Auth.*,
    161 A.D.2d 288, 555 N.Y.S.2d 61 (1st Dep't 1990) ................................................................4

*Richardson v. N.Y. City Bd. of Educ.*,
    711 F. App'x 11 (2d Cir. 2017) ................................................................................................6

*Romero v. Metro. Transp. Auth.*,
    444 F. Supp. 3d 583 (S.D.N.Y. 2020),
    *appeal dismissed* (2d Cir. 20-1268, Aug. 4, 2020) ........................................ passim

*Romero, et al. v. Manhattan & Bronx Surface Operating Auth., et al.*,
    Index No. 154362/2021 (Sup. Ct. N.Y. Cnty. May 4, 2021)...................................................10

*Rosi v. Aclaris Therapeutics*,
    No. 19-cv-7118 (LJL), 2021 WL 1177505 (S.D.N.Y. Mar. 29, 2021)....................................11

*Ruston v. Town Bd. of Town of Skaneateles*,
    610 F.3d 55 (2d Cir. 2010)...................................................................................................21

*Short v. Mary*,
    617 F. App'x 410 (6th Cir. 2015) ........................................................................................24

*United States ex rel. Ladas v. Exelis, Inc.*,
    824 F.3d 16 (2d Cir. 2016)...................................................................................................29

*Vill. of Willowbrook v. Olech*,
    528 U.S. 562 (2000)......................................................................................................19, 20

*Watkins v. First Student, Inc.*,
    No. 17-CV-1519 (CS), 2018 WL 1135480 (S.D.N.Y. Feb. 28, 2018) ..................................16

*Weinstein v. Albright*,
    261 F.3d 127 (2d Cir. 2001)................................................................................................23

*Winfield v. Citibank, N.A.*,
    842 F. Supp. 2d 560 (S.D.N.Y. 2012)..................................................................................30

*Zaiman v. Metro. Transit Auth.*,
    186 A.D.2d 555, 588 N.Y.S.2d 402 (2d Dep't 1992) ............................................................4

**STATUTES**

29 U.S.C. § 201 *et seq.*........................................................................................... passim

29 U.S.C. § 255.................................................................................................................17, 18

N.Y. Pub. Auth. Law § 1201-2 ................................................................................................4

N.Y. Pub. Auth. Law § 1203-a ................................................................................................4

N.Y. Pub. Auth. Law § 1203-a(3)(b) ...................................................................................4, 21

N.Y. Pub. Auth. Law § 1210(2) ...........................................................................................4, 21

N.Y. Pub. Auth. Law § 1263 ...................................................................................................3

N.Y. Pub. Auth. Law § 1264 ........................................................................................3, 4

N.Y. Pub. Auth. Law § 1265(8)....................................................................................4, 21

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 10, 11

New York State Executive Order 202.67 ..................................................................18

5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1364 (3d ed. 2021).............................11

Defendants Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA") and Metropolitan Transportation Authority (*s/h/a* "Metropolitan Transportation Authority" and "MTA Headquarters a/k/a/ MTA Information Technology") ("MTA") (together, "Defendants") submit this memorandum of law in support of their motion to dismiss the Verified Collective and Class Action Complaint (No. 1:21-cv-04951-LJL ("*Romero II*"), Dkt. 1, Ex. B) (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiffs (former and current employees of MaBSTOA and MTA, respectively) previously filed an action against Defendants asserting identical claims for relief that are asserted in this action, which Judge John G. Koeltl dismissed on March 12, 2020:  (i) unpaid overtime for when they were allegedly compensated at a straight-time rate for hours worked over forty (40) in a workweek under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); and (ii) alleged "unequal pay" as compared to employees holding purportedly similar job titles for non-Defendant New York City Transit Authority ("NYCTA") pursuant to the Equal Protection Clauses of the U.S. and New York State Constitutions.  *See Romero v. Metro. Transp. Auth.*, 444 F. Supp. 3d 583 (S.D.N.Y. 2020), *appeal dismissed*, (2d Cir. 20-1268, Aug. 4, 2020) ("*Romero I*").  Plaintiffs filed a notice of appeal in *Romero I*, but then abandoned the appeal after failing to file their Appellants' Brief.  Then, in an evident attempt to forum shop, Plaintiffs commenced the instant action in New York State Court, pleading a few additional factual allegations in support of their claims.  Despite Plaintiffs' paltry attempts to cure their pleading deficiencies for the *fourth* time (as detailed below), the Complaint—once again—fails as a matter of law and should be dismissed with prejudice in its entirety, for the following reasons.

*First*, Plaintiffs have failed to state a plausible FLSA claim for unpaid overtime.  There are one-hundred and seventy five (175) named Plaintiffs who seek unpaid overtime under the FLSA.  However, Plaintiffs have only pled individualized factual allegations related to just ***two of them***—Mr. Romero and Ms. Wellington.  The remaining one-hundred and seventy-three (173) Plaintiffs rely on identical allegations parroting the language of the FLSA, which the Second Circuit (on numerous occasions), Judge Koeltl in *Romero I*, and this Court have expressly held are insufficient to state a claim for unpaid overtime under the FLSA as a matter of law.  Moreover, the individualized allegations pled as to Mr. Romero and Ms. Wellington, respectively, fail to include the requisite specificity to state a claim for relief under the FLSA, as Plaintiffs have failed to include any facts concerning their regular workweeks, as well as when, under what circumstances, and how frequently they performed uncompensated overtime.  Each of the one-hundred and seventy-five (175) Plaintiffs' FLSA claims fail for the additional and independent reason that they are time-barred, even assuming a three (3) year limitations period for "willfulness."  Plaintiffs readily admit in the Complaint, as they must, that they began receiving overtime pay at one-and-one-half times the regular rate of pay at the latest in October 2017 or March 2018—well more than three (3) years before Plaintiffs commenced this action on May 4, 2021.

*Second,* Plaintiffs' federal and co-extensive state equal protection claims likewise fail as a matter of law.  Once again, Plaintiffs have not, because they cannot, cured their failed pleadings from *Romero I*.  As an initial and dispositive matter, Plaintiffs' theory of "unequal pay" amounts to an improper "class-of-one" equal protection allegation, which the Supreme Court has flatly held is inappropriate in the public-employment context.  This alone warrants dismissal.  Even assuming Plaintiffs have standing to assert an equal protection claim under

these circumstances, which they do not, Plaintiffs fall woefully short of establishing a *prima facie* case, for the exact same reasons Judge Koeltl dismissed the action in *Romero I*.  The gravamen of the equal protection claims is that the MaBSTOA salary ranges (*i.e.*, the minimum and maximum salaries) for certain job titles are five percent (5%) less than the NYCTA salary ranges for allegedly similar job titles.  Plaintiffs have not added any additional factual allegations from their Second Amended Complaint in *Romero I* that would warrant reexamination of—let alone departure from—Judge Koeltl's well-reasoned holding in *Romero I* that Plaintiffs' unique collective bargaining history establishes that: (i) Plaintiffs are not "similarly situated" to the alleged comparator NYCTA employees; and (ii) there is a rational basis for any difference in pay between Plaintiffs and the purported comparators.  Plaintiffs' equal protection claims thus fail as a matter of law and should be dismissed.

*Finally,* Plaintiffs have been indisputably on notice of their pleading deficiencies by virtue of Judge Koeltl's decision in *Romero I*—involving the ***exact same parties*** and the ***exact same claims***.  Plaintiffs had three separate opportunities to plead sufficient allegations in *Romero I*, but failed to do so.  Now, they have filed a fourth iteration of the Complaint.  The case law demonstrably supports dismissal of the action with prejudice, as Plaintiffs should not be granted leave to amend for what would now amount to a ***fifth time***.

## FACTUAL BACKGROUND

## I.     THE PARTIES.

### A.     Defendants.

MTA is a public benefit corporation.  N.Y. Pub. Auth. Law § 1263.  MTA's purposes include "the continuance, further development and improvement of commuter transportation." N.Y. Pub. Auth. Law § 1264.  These purposes have been deemed "for the benefit of the people

of the state of New York" and MTA is "regarded as performing an essential governmental function." *Id.*  The New York Civil Service Law ("NYCSL") does not govern MTA employees. *See Matter of Clark v. Metro. Transp. Auth.*, 46 Misc. 3d 344, 348, 999 N.Y.S.2d 309, 313 (Sup. Ct. N.Y. Cnty. 2013); N.Y. Pub. Auth. Law § 1265(8).

MaBSTOA is also a public benefit corporation and a wholly-owned subsidiary of non-Defendant NYCTA.[1]  N.Y. Pub. Auth. Law § 1203-a.  MaBSTOA has been held to be a distinct and "separate entit[y]" from both NYCTA and the MTA.  *Reis v. Manhattan & Bronx Surface Transit Operating Auth.*, 161 A.D.2d 288, 555 N.Y.S.2d 61 (1st Dep't 1990) (MaBSTOA and NYCTA are distinct); *Zaiman v. Metro. Transit Auth.*, 186 A.D.2d 555, 557, 588 N.Y.S.2d 402, 404 (2d Dep't 1992) (MaBSTOA and MTA are distinct).  Employees of MaBSTOA cannot become "for any purpose, employees of…[NYCTA] and shall not acquire civil service status or become members of the New York City employees' retirement system…"  N.Y. Pub. Auth. Law § 1203-a(3)(b).  Notably, NYCSL governs NYCTA employees (N.Y. Pub. Auth. Law § 1210(2)), but **not** MaBSTOA employees.  *Collins v. Manhattan & Bronx Surface Transit Operating Auth.*, 62 N.Y.2d 361, 371-72, 477 N.Y.S. 91, 96 (1984); N.Y. Pub. Auth. Law § 1203-a(3)(b).

### B.    Plaintiffs.

The Complaint identifies one-hundred and ninety-five (195) Plaintiffs.[2]  (*Romero II*, Dkt. 1-2, Complaint ("Compl.") at ¶¶ 8-201.)  Plaintiffs largely comprise a disparate mix of current or

---

[1]    NYCTA is a public benefit corporation and (like MaBSTOA) is an affiliate, not a subsidiary, of MTA. N.Y. Pub. Auth. Law §§ 1201-2, 1264.

[2]    There are one-hundred and ninety-five (195) total named Plaintiffs.  One-hundred and seventy-five (175) of the named Plaintiffs seek unpaid overtime under the FLSA and relief under the federal and state equal protection clauses for alleged unequal pay, and an additional twenty (20) named Plaintiffs seek only relief under the federal and state equal protection clauses for alleged unequal pay, but not unpaid overtime under the FLSA.  (*See Romero II*, Compl. at ¶¶ 8-201.)

former MaBSTOA employees holding one of at least thirty (30) different job titles represented for collective bargaining purposes with MaBSTOA by the Transport Workers Union of Greater New York, Local 100, AFL-CIO ("TWU") in one of two bargaining units:

> (i)    Computer and Telecommunications Unit, certified April 13, 2016 by the New York State Public Employee Relations Board ("PERB") in Case No. C-6352 (the "Computer Titles"); and
>
> (ii)   Staff Analyst & Transit Management Analyst Unit, certified August 31, 2017 by PERB in Case No. C-6422 (the "Staff Analyst Titles"). [3]

*See* Declaration of Steven Hurd ("Hurd Decl.") at Exs. 1, 3.[4]

## II.    RELEVANT HISTORY OF COMPUTER AND STAFF ANALYST TITLES.

### A.    MaBSTOA Computer And Staff Analyst Titles.

Prior to PERB certification, Plaintiffs in the MaBSTOA Computer and Staff Analyst Titles were not represented by any employee organization for collective bargaining purposes. Consequently, these titles were grouped with other "non-represented, career and salary" titles for purposes of personnel administration, including issuance of general wage increases and eligibility for pension and other benefit plans and/or programs.  These titles experienced a four-year wage freeze from 2009 through 2012.  *See, e.g.*, Hurd Decl., Ex. 4 at 22.

Following their respective PERB certifications, MaBSTOA and TWU engaged in negotiations resulting in two initial contracts covering wages, hours and other terms and

---

[3]    Plaintiffs' counsel in the instant matter represented the TWU in both the Computer Titles and Staff Analyst Titles certification proceedings before PERB and during subsequent collective bargaining negotiations.  (*See* Case No. 1: 19-cv-00694-JGK, *Romero I*, Dkt. 37 at 2 n.1.  References to Docket entries in *Romero I* are hereinafter referred to as ("*Romero I*, Dkt.___").)

[4]    The documents attached to the Declaration of Steven Hurd are identical to what Defendants attached to and submitted with their Motion to Dismiss in *Romero I*, with the exception of a redline comparison between the Second Amended Complaint in *Romero I* and the Complaint in *Romero II* (*see* Hurd Decl., Ex. 7).  Plaintiffs did not refute the veracity of those documents and Judge Koeltl took notice of such documents in *Romero I*.  (*See Romero I*, 444 F. Supp. 3d at 591-92.)

conditions of employment: (i) for the Computer Titles, effective October 31, 2016 to January 15, 2017, and extended by MOA until July 13, 2019; and (ii) for the Staff Analyst Titles, effective March 15, 2018 to July 13, 2019. [5] *See* Hurd Decl., Exs. 1-3. These agreements contain the parties' agreed-upon salary structures and overtime policies for the Computer and Staff Analyst Titles, respectively. *See* Hurd Decl., Ex. 1 at Art. IV; Ex. 2 at 1-4; Ex. 3 at Arts. IV & XII. Pursuant to the terms of these agreements, Plaintiffs—regardless of their exempt or non-exempt FLSA status—received compensation over 40 hours in a workweek at a rate of one-and-a-half times their regular rates of pay. (*Id.*; *Romero I*, Dkt. 37 at 2 n.1.)

**B.     NYCTA Computer and Staff Analyst Job Titles.**

NYCTA utilizes job titles that are similar to the MaBSTOA Computer and Staff Analyst Titles. (*See, e.g.*, *Romero II*, Compl. at ¶¶ 217-18.) However, these NYCTA job titles (which, unlike the MaBSTOA titles, ***are*** covered by NYCSL) have a more than twenty-year history of collective representation by different labor organizations than TWU (which represents the MaBSTOA employees as discussed above): (i) District Council 37, AFSCME, AFL-CIO ("DC-37") represents certain computer-related titles; and (ii) the Organization of Staff Analysts ("OSA") represents certain staff analyst-related titles. *See* Hurd Decl., Exs. 5, 6A. *See also Romero I*, 444 F. Supp. 3d at 592. The wages, hours and other terms and conditions of employment for NYCTA employees in these bargaining units are set forth in the respective collective bargaining agreements and the NYCSL. *See* Hurd Decl., Exs. 5, 6A. Notably, DC-37

---

[5]     "The Court may take collective bargaining agreements into consideration in deciding this motion to dismiss, because the plaintiffs relied on the results of union negotiations and were aware of their own history of union representation when they filed their complaint. In addition, the Court may take judicial notice of collective bargaining agreements, which are public documents, promulgated by or binding on a government agency, and not subject to reasonable dispute." *See Romero I*, 444 F. Supp. 3d at 591, *citing Richardson v. N.Y. City Bd. of Educ.*, 711 F. App'x 11, 13-14 (2d Cir. 2017).

and OSA-represented employees did not experience a four-year wage freeze from 2009 through 2012, and have historically negotiated independently of the TWU.  *See* Hurd Decl., Exs. 5 at 3, 6A-6E.

## PROCEDURAL HISTORY

I.    ***ROMERO I* (Case No. 1: 19-cv-00694-JGK).**

On January 24, 2019, Plaintiffs filed an action against Defendants asserting, as relevant here, a violation of the FLSA and Equal Protection Clauses of the United States and New York State Constitutions.  *See generally*, *Romero I*, 444 F. Supp. 3d 583.  Plaintiffs then filed a First Amended Complaint on April 10, 2019.  (*Romero I*, Dkt. 18.)  On May 29, 2019, Defendants filed a letter requesting a pre-motion conference in anticipation of filing a motion to dismiss the First Amended Complaint.  (*Romero I*, Dkt. 34.)  On June 11, 2019, following Plaintiffs' letter opposing Defendants' request for a pre-motion conference, Judge Koeltl granted Plaintiffs leave to amend the Complaint for a second time, in response to the arguments asserted by Defendants in their pre-motion conference letter.  (*Romero I*, Dkt. 39.)  The Court set a deadline for Defendants to answer the Second Amended Complaint, or, alternatively, a briefing schedule for Defendants' forthcoming motion to dismiss.  (*Id.*)

Plaintiffs filed a Second Amended Complaint on July 1, 2019.  (*Romero I*, Dkt. 41.)  On July 19, 2019, Defendants moved to dismiss the Second Amended Complaint.  (*Romero I*, Dkt. 43.)  Plaintiffs opposed Defendants' motion to dismiss on August 21, 2019 (which was one day after the original deadline to file Plaintiffs' opposition, after Plaintiffs received a *post-hoc* extension from the Court).  (*Romero I*, Dkt. 46, 49, 50.)  Defendants filed a reply on September 6, 2019.  (*Romero I*, Dkt. 51.)  The Court held oral argument on February 4, 2020 (*Romero I*,

Dkt. 56), and requested that the parties submit letters in response to certain questions on February 12, 2020.  (*Romero I*, Dkt. 60.)

On March 13, 2020, Judge Koeltl dismissed the Complaint in its entirety, and specifically dismissed Plaintiffs' FLSA and Equal Protection claims without prejudice.[6]  *Romero I*, 444 F. Supp. at 583.

As to the FLSA claims, Plaintiffs alleged in conclusory fashion that they worked more than eight (8) hours a day in a five-day week, or worked during a weekend or more than forty (40) hours and did not receive overtime pay.  *Id.*  Judge Koeltl observed that "plaintiffs have not provided information about work schedules of or actual hours worked by any employee, which might have allowed the Court to conclude that a plaintiff was eligible to receive overtime pay." *Id.* at 587.  Judge Koeltl adopted Defendants' arguments in full, finding—consistent with well-established Second Circuit precedent—that Plaintiffs' "allegations [were] insufficient because they simply repeat[ed] the language of the statute and [were] too general to put the [D]efendants on notice of the alleged violations."  *Id.* at 588.

As to the Equal Protection Claims, Judge Koeltl first concluded that the claims under the U.S. and New York State Constitutions should be analyzed together, as they are "coextensive." *Id.* at 590 n.8.  The Court then rejected Defendants' threshold argument that Plaintiffs' Equal Protection Claims fail because Supreme Court precedent, in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), bars "class-of-one" Equal Protection Claims against public employers absent an allegation that plaintiffs are members of a protected class or group. *Romero*, 444 F. Supp. 3d at 590-91.  The Court concluded that *Engquist* still permits equal

---

[6]     The Court also dismissed Plaintiffs' claims for unpaid overtime under the NYCSL with prejudice.  *Romero I*, 444 F. Supp. 3d at 588-89.  Plaintiffs have not re-pled their claims for unpaid overtime under the NYCSL in this action.

protection claims against public employers, as long as "plaintiffs' claims are made on behalf of a group of individuals," even though plaintiffs do not allege membership in a ***protected*** class or group; here, plaintiffs allege Equal Protection violations on behalf of "employees of MTAHQ and MaBSTOA." *Romero*, 444 F. Supp. 3d at 591.

However, Judge Koeltl dismissed the Equal Protection Claims without prejudice for two principal reasons.  First, the Court found that Plaintiffs "fail to meet the exacting standards required to show that they are similarly situated to employees of NYCTA," concluding that they have different histories of collective bargaining negotiations and are subject to different statutory schemes, as employees of MaBSTOA and NYCTA, respectively.  *Id.* at 591.  Second, the Court held that Plaintiffs "cannot show that no rational basis exists for the differences in salary ranges," finding that a rational basis exists for the alleged salary differences:  "NYCTA employees unionized earlier than MaBSTOA employees and therefore have a longer history of negotiations." *Id.* at 592.  The Court concluded, "[m]oreover, [that] disagreements regarding the wages that plaintiffs in MABSTOA and MTAHQ receive, compared to the wages that employees of NYCTA receive, are matters better resolved between the plaintiffs' unions and the defendants in the collective bargaining process, rather than in the federal courts." *Id.*

On April 13, 2020, Plaintiffs filed a Notice of Appeal to the U.S. Court of Appeals for the Second Circuit.  (*Romero I*, Dkt. 69.)  However, Plaintiffs abandoned the appeal after they failed to file their Appellants' Brief or otherwise comply with the Second Circuit's scheduling order. (*Romero I*, Dkts. 70-71.)  The appeal was dismissed as of August 3, 2020, and the mandate was issued on August 18, 2020, when Plaintiffs did not move to reinstate the appeal pursuant to the Second Circuit's Rules.  (*Id.*)

## II. *ROMERO II* (Case No. 1:21-cv-04951-LJL).

On May 4, 2021, Plaintiffs commenced the instant action in the Supreme Court for the State of New York, County of New York, captioned *Romero, et al. v. Manhattan & Bronx Surface Operating Auth., et al.*, Index No. 154362/2021 (Sup. Ct. N.Y. Cnty. May 4, 2021). (*Romero II*, Dkt. 1 at Ex. B.)  MaBSTOA accepted service by electronic mail on May 18, 2021. To date, MTA has not been served.

On June 4, 2021, Defendants noticed removal to the Southern District of New York, on the basis that this Court has original jurisdiction over the FLSA and Federal Equal Protection claims, and supplemental jurisdiction over the New York State Equal Protection claim.  (*Romero II*, Dkt. 1.)

Simultaneously, Defendants filed a Related Case Statement asserting this action is related to *Romero I*.  (*Romero II*, Dkt. 3.)  Defendants did not answer or otherwise respond prior to removal.  (*Romero II*, Dkt. 1, Ex. A.)

## LEGAL STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a plaintiff must provide "more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'"  *Chen v. Major League Baseball Props., Inc.*, 6 F. Supp. 3d 449, 451 (S.D.N.Y. 2014) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)), *aff'd* 798 F.3d 72 (2d Cir. 2015).  "'[N]aked assertion[s] 'devoid of' further factual enhancement'" do not make out a well-pleaded complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  "While the Court should construe the factual allegations in the light most favorable to the plaintiff, 'the tenet

that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.'"  *Chen*, 6 F. Supp. 3d at 452 (quoting *Iqbal*, 556 U.S. at 678).

In ruling on a Federal Rule of Civil Procedure 12(b)(6) motion, the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  *See Romero*, 444 F. Supp. 3d at 591; *Rosi v. Aclaris Therapeutics*, No. 19-cv-7118 (LJL), 2021 WL 1177505, at *1 n.1 (S.D.N.Y. Mar. 29, 2021) ("In reviewing a Rule 12(b)(6) motion, the court may consider… documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference…").  Further, "[a] wide range of material may be introduced in conjunction with a Rule 12(b) motion," including, for example, "collective bargaining agreements that are in issue between the parties."  5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1364 (3d ed. 2021).

The pleading standards in *Twombly* and *Iqbal* apply in wage-and-hour cases like this one. *See, e.g.*, *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) (dismissing FLSA overtime claims).  The same pleading standards also apply in equal protection cases.  *See, e.g.*, *Progressive Credit Union v. City of N.Y.*, 889 F.3d 40 (2d Cir. 2018) (affirming dismissal of equal protection claims).  Significantly, when analyzing an equal protection claim, courts are "not confined to the particular rational or irrational purposes that may have been raised in the pleadings," and may go outside of the complaint to "hypothesize" a legitimate, rational governmental purpose.  *Id.* at 50 (*citing Johnson v. Baker*, 108 F.3d 10, 11-12 (2d Cir. 1997)).

## LEGAL ARGUMENT

**I.     PLAINTIFFS' FLSA CLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW.**

### A.     Plaintiffs Have Failed To State A Claim For Unpaid Overtime Under The FLSA.

Even after being afforded, in essence, the opportunity to amend their pleading *four* times, Plaintiffs again fail to satisfy the well-established pleading standards for FLSA overtime claims. The Second Circuit has held that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy*, 711 F.3d at 114.  Further, "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013) (affirming dismissal because plaintiffs' allegations that they were not compensated for time worked outside their shifts merely "raise[d] the possibility" of an overtime claim, and "absent any allegation that Plaintiffs were scheduled to work forty hours in a given week," they did not state a plausible claim for relief); *DeJesus v. HF Mgmt. Servs.,* 726 F.3d 85 (2d Cir. 2013) (affirming dismissal of FLSA claims).

*Nakahata* and *DeJesus* are particularly instructive.  In *Nakahata*, plaintiffs alleged that they "regularly worked hours both under and in excess of forty per week and were not paid for all of those hours," but the Second Circuit found that their claims were insufficient because they merely "raise[d] the possibility that [the] [p]laintiffs were undercompensated."  723 F.3d at 199, 201.  The Court affirmed dismissal of plaintiffs' FLSA claims, noting that while plaintiffs asserted that they were not compensated for work performed during meal breaks, before and after shifts, or during required trainings, "absent any allegation that Plaintiffs were **scheduled** to

work forty hours in a given week," their allegations did not state a plausible claim for relief.  *Id.* at 201 (emphasis added).

The Court in *DeJesus* similarly held that the complaint lacked specific allegations to render plaintiff's claims plausible, as she failed to estimate her hours in any or all weeks or to provide any other factual context or content "beyond those plucked from the statute."  *Id.* at 89. While the Court noted that plaintiffs are not "required to keep careful records and plead their hours with mathematical precision, [the Court] recognized that it is employees' memory and experience that lead them to claim in federal court that they have been denied overtime in violation of the FLSA in the first place."  *Id.* at 90.  The Court concluded:  "Our standard requires that plaintiffs draw on those resources in providing complaints with sufficiently developed factual allegations."  *Id.*

In *Romero I*, Judge Koeltl appropriately followed *Nakahta*, *Lundy*, and their progeny, and dismissed the precursor to this suit for the very same reasons.  *Romero I*, 444 F. Supp. 3d at 587-88.  Indeed, Judge Koeltl held that Plaintiffs' non-specific allegations did not state a viable claim for unpaid overtime under the FLSA, holding that the "general allegations that plaintiffs worked more than eight hours a day in a five-day week or worked during a weekend or on a scheduled off day… are insufficient because they simply repeat the language of the statute …."  *Id.  See also Cortese v. Skanska Koch*, 20-cv-1632 (LJL), 2021 WL 429971, at *12 (S.D.N.Y. Feb. 8, 2012) (dismissing a complaint that contained "no facts—only conclusions—to support the allegation that Plaintiffs' worked 'more than forty hours in a given week.'") (quoting *Nakahata*, 723 F.3d at 201).  Notwithstanding this clear ruling, one-hundred and seventy-three (173) of the one-hundred and seventy-five (175) named Plaintiffs in this case who seek unpaid overtime under the FLSA rely on ***identical*** boilerplate allegations that Judge Koeltl (in *Romero I*) and the

Second Circuit (on numerous occasions) have flatly rejected as insufficient to state a claim as a matter of law.  (*Compare Romero I*, Dkt. 41, Second Am. Compl. at ¶¶ 203, 205-09 *with Romero II*, Compl. at ¶¶ 207, 209-13, 215.) [7]

Plaintiffs have only attempted (unsuccessfully) to remedy the blatant pleading deficiencies regarding their FLSA claims as to two (2) of the one-hundred and seventy-five (175) named plaintiffs who seek unpaid overtime under the FLSA (Mr. Romero and Ms. Wellington). (*Romero II*, Compl. at ¶¶ 214-15.)  Absent allegations as to the remaining one-hundred seventy-three (173) named Plaintiffs, those Plaintiffs' FLSA claims should be dismissed with prejudice. *Kearse v. City of N.Y.* is directly on point.  No. 17-CV-9982 (JMF), 2018 WL 2059658, at *2 (S.D.N.Y. May 1, 2018).  In that case, the Court dismissed Plaintiffs' claims for similar reasons, as Plaintiffs failed to allege specific facts as to a number of named plaintiffs in the action, concluding that "Plaintiffs cite no authority for the proposition that, where claims are brought on behalf of multiple plaintiffs, it suffices to allege plausible claims as to some plaintiffs and, as to the other plaintiffs, merely to allege 'me too' in conclusory fashion.  As other judges in this district have held in similar circumstances, *Iqbal*, *Twombly*, and *Lundy* require more." *Id.* (citing cases).  *See also Campbell v. City of N.Y.*, No. 16-CV-08719 (AJN), 2017 WL 3206332, at *2-3 (S.D.N.Y. July 25, 2017) (requiring individualized allegations as to each plaintiff in a multi-plaintiff FLSA complaint); *Murray v. City of N.Y.*, No. 16-CV-8072 (PKC), 2017 WL

---

[7]       *See also* Hurd Decl., Ex. 7 (which reflects a comparison between the Second Amended Complaint in *Romero I* and the Complaint in *Romero II*).  Further, as in *Romero I*, Plaintiffs implicitly acknowledge the insufficiency of their allegations as they allege they require "access to Defendants' time records" to "precisely determine which weeks they worked overtime without overtime pay."  (*Romero II*, Compl. at ¶ 216.)  For this reason, Plaintiffs are again seeking leave of Court to amend the Complaint after discovery.  (*Id.*)  While the Second Circuit does not require "mathematical precision," Plaintiffs **are** required to draw upon their experiences and memories and undertake sufficient diligence **before** filing a claim for unpaid overtime—which they failed to do here, after many months of notice of their pleading deficiencies and the opportunity to correct them.  *See Dejesus*, 726 F.3d at 90.  Judge Koeltl swiftly rejected this claim in *Romero I*, remarking that at least one of the plaintiffs (Ms. Wellington) claimed to have paystubs in her possession, which she attempted to attach to the opposition to the motion to dismiss, which "defeats the plaintiffs' assertion that discovery is necessary for the plaintiffs to determine which weeks they worked overtime without overtime pay."  *Romero I*, 444 F. Supp. 3d at 587 n.5.

3531552, *3 (S.D.N.Y. Aug. 16, 2017) (denying plaintiffs' argument that "*Lundy* does not require individualized allegations as to each plaintiff in a multi-plaintiff FLSA complaint").

Dismissal is likewise warranted with respect to the two remaining named Plaintiffs (Mr. Romero and Ms. Wellington), because their meager attempt to cure the pleading deficiencies identified by Judge Koeltl in *Romero I* is plainly inadequate.  While Mr. Romero identifies four (4) workweeks in November and December 2016, where he allegedly worked between nine (9) and twelve (12) "overtime" hours, he failed to provide specific information about his work schedule, actual hours worked and/or the type of work performed sufficient to state a claim for unpaid overtime under the FLSA.  (*See Romero II*, Compl. at ¶ 214.)  Such facts are plainly required by Courts in this District to survive a motion to dismiss.  *See, e.g.*, *Romero I*, 444 F. Supp. 3d at 587; *Knight v. MTA-New York City Transit Auth.*, No. 1:19-cv-09960 (VSB), 2021 WL 2435577, at *3-5 (S.D.N.Y. June 15, 2021) (dismissing an FLSA claim where Plaintiff did not provide any detail about the length and frequency about her alleged unpaid overtime beyond the weeks where the alleged overtime was worked); *Cortese*, 2021 WL 429971, at *12 (dismissing a complaint that contained "no facts—only conclusions—to support the allegation that Plaintiffs' worked more than forty hours in a given week.").  Ms. Wellington's threadbare allegations fare even worse, as she merely alleges in wholly-conclusory fashion that she "was required to work over 40 hours" during four (4) workweeks in January, February and May 2016. (*Romero II*, Compl. at ¶ 215.)

The Honorable Vernon S. Broderick's decision on June 15, 2021 is particularly instructive and compels dismissal of Plaintiffs' FLSA claims here.  In *Knight v. MTA-New York City Transit Authority*, the Court dismissed an FLSA action brought by a single Plaintiff, purportedly on behalf of a putative FLSA Collective and Rule 23 Class (represented by the same

15

counsel as here), against NYCTA, finding that plaintiff failed to adequately plead her FLSA claim for unpaid overtime—premised on the exact same theory as Plaintiffs have alleged here, although against a different defendant, NYCTA—with the specificity required by the Second Circuit in *Nakahata* and its progeny. *See Knight*, 2021 WL 2435577, at *3-5. While the plaintiff in *Knight* generally alleged that she worked "in excess of 40 hours in a work week but was not paid at a premium rate for hours worked over 40 when she worked as a test monitor," and even identified specific workweeks in 2017 where she allegedly worked overtime hours, the Court correctly held (citing *Romero I*) that plaintiff did not provide sufficient detail about the "length and frequency of [plaintiff's] unpaid work" to state an FLSA claim. *Id.* at *3. Significantly, Judge Broderick concluded that plaintiff did not plead facts "showing that she definitively worked in excess of 40 hours in any 'given' week," as she did not provide sufficient "contextual detail" as to "the specifics regarding the number of hours allegedly worked overtime during those dates," nor the "alleged dates, the alleged numbers of weeks" that she worked in a given role, "nor the number of hours that she allegedly worked overtime in support of those claims." *Id.* at *3-4. Judge Broderick concluded that Plaintiff did "little more than recite the statutory requirements of the FLSA," which fails to pass muster. *Id.* at *4.

Similarly, in *Watkins v. First Student, Inc.,* No. 17-CV-1519 (CS), 2018 WL 1135480, at *8 (S.D.N.Y. Feb. 28, 2018), the Court dismissed plaintiff's FLSA overtime claim because, like here, no specific information was provided regarding the workweeks in which overtime was allegedly worked. There, the Court dismissed the complaint because, although (like here) the Plaintiff attempted to identify specific workweeks where she was not compensated for hours worked over forty (40), she did not describe the number of days that she worked in the identified workweeks, the length of the shifts, whether she was required to arrive early or leave late,

16

whether she worked through breaks, her rate of pay or income earned, or any other factual content that could nudge her claim closer to plausibility. *Id*; *See also Perkins v. 199 SEIU United Healthcare Workers E.*, 73 F. Supp. 3d 278, 290 (S.D.N.Y. 2014) (holding that a plaintiff is "reasonably expected to recall basic facts about his own work experience, such as when he worked overtime; whether he came to work early, stayed late, or took on additional shifts; approximately how many extra hours he worked per week; and the types of tasks he performed during his overtime hours."). *Cf. Juarez v. Butterfield Catering, Inc.*, 20-cv-4537 (LJL), 2020 WL 6945944, at *2 (S.D.N.Y. Nov. 25, 2020) (denying defendant's motion to dismiss FLSA claims where plaintiff alleged with specificity he worked seven days a week from approximately 4 A.M. to 6 P.M for the entire month of October).

As in *Romero I*, Plaintiffs have again merely raised the possibility of a potential claim for unpaid FLSA overtime, but this is plainly insufficient under Second Circuit jurisprudence. Plaintiffs' FLSA claims should, therefore, be dismissed.

**B.    Plaintiffs' FLSA Claims Are Barred Under The Applicable Statute Of Limitations.**

Even if this Court finds that some or all of the one-hundred and seventy-five (175) named Plaintiffs have satisfied the pleading standards pursuant to *Lundy* and its progeny to survive dismissal—which they have not—Plaintiffs' FLSA claims for unpaid overtime should be dismissed for an additional and independent reason:  they are indisputably barred by the applicable three (3) year statute of limitations, which generously assumes a finding of "willfulness" against Defendants.  *See* 29 U.S.C. § 255.  *Romero II* was commenced in New York State Court on May 4, 2021, which is well-more than three (3) years after Plaintiffs—by their own admission—claim to have begun receiving "overtime pay in 2017 or 2018 as a result of collective bargaining carried out by their union." *Romero I*, 444 F. Supp. 3d at 586; *see also*

17

*Romero II*, Compl. at ¶ 225.  In fact, as Defendants stated in their Motion to Dismiss in *Romero I* (*see Romero I*, Dkt. 43 at 13)—which Plaintiffs did not refute in any respect—pursuant to newly-negotiated collective bargaining agreements, employees in Computer Titles began receiving time-and-one-half pay for overtime at the latest as of October 1, 2017, and employees in the Staff Analyst Titles began receiving overtime pay at the latest in March 2018.  *See* Hurd Decl., Exs. 1-3.  It is thus indisputable that Plaintiffs have no cognizable claim for unpaid overtime under the FLSA—by their own admission—within the three-year limitations period prior to the filing of the State Court Complaint on May 4, 2021.

Plaintiffs' reliance on New York State Executive Order 202.67, dated October 5, 2020, to toll the applicable statute of limitations here, (*see Romero II*, Compl. at ¶ 6), is misplaced.  As this Court has held, the Executive Order did not "toll time periods prescribed by federal law." *O'Rourke v. Ehsan Food Corp.*, No. 19-CV-6162 (LJL), 2020 WL 6894663, at *1 (S.D.N.Y. Nov. 24, 2020) (internal citations omitted).  Accordingly, the statutory provision governing the time period to file a claim for unpaid overtime under the FLSA (*see* 29 U.S.C. § 255) should not be tolled pursuant to New York State Executive Order 202.67, and thus Plaintiffs' FLSA claims are untimely.

## II.  PLAINTIFFS' FEDERAL AND STATE EQUAL PROTECTION CLAIMS ARE BARRED AS A MATTER OF LAW AND SHOULD BE DISMISSED.

### A.  Plaintiffs Have Failed To Establish A *Prima Facie* Claim Of Unequal Pay Under The Federal and State Equal Protection Clauses.

As in *Romero I*, the Complaint here is again devoid of sufficient facts to establish a *prima facie* equal protection clause violation.  In *Romero I*, Judge Koeltl dismissed Plaintiffs' **identical** equal protection claims for two reasons:  (i) Plaintiffs "fail[ed] to meet the exacting standards required to show that they are similarly situated to employees of NYCTA"; and (ii) Plaintiffs

"cannot show that no rational basis exists for the differences in salary ranges." *Romero I*, 444 F. Supp. 3d at 591-92.  Here, the ***sole*** additional fact related to their equal protection claims that Plaintiffs have pled in this action, but was not asserted in *Romero I*, is a statement that Defendants purportedly moved "employees" between Defendants and non-Defendant NYCTA's payrolls without changing the work assigned.  (*See Romero II*, Compl. at ¶ 220.)   This generalized, non-Plaintiff specific allegation in no way refutes the facts held by Judge Koeltl to reach his well-reasoned dismissal—namely: (a) that the terms and conditions of employment for Plaintiffs versus the alleged comparators are governed by distinct collective bargaining agreements, each with its own history of collective bargaining negotiations, such that Plaintiffs and their alleged comparators are not "similarly situated" for purposes of an equal protection claim; and (b) the distinct collective bargaining agreements and negotiations provide a rational basis for the alleged differences in salary scales, and that disagreements regarding the wages Plaintiffs receive as compared to those of NYCTA-employees are matters to be resolved in the collective bargaining process.  Consequently, and as detailed further below, Plaintiffs have failed to sufficiently allege a *prima facie* equal protection violation, and the federal and state equal protection claims should be dismissed with prejudice.

### B.   Plaintiffs Have Not Sufficiently Pled That They Were Treated Differently From And Are "Similarly Situated" to NYCTA Employees.

The Equal Protection Clause of the Fourteenth Amendment "requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, *Inc.*, 473 U.S. 432, 439 (1985)).  To state a valid equal protection claim, Plaintiffs must, therefore, sufficiently plead that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564

(2000) (*per curiam*).  The Second Circuit has held "'that a class-of-one claim[8] requires a plaintiff to show an extremely high degree of similarity between itself and its comparators,' the functional equivalent of a showing that a plaintiff and its comparators are *prima facie* identical." *Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. State*, 336 F. Supp. 3d 50, 76-77 (E.D.N.Y. 2018) (citing *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (citations omitted)).  Plaintiffs have demonstrably failed to do so.

As an initial matter, Plaintiffs *still* fail to plead they were actually treated differently from NYCTA employees.  The gravamen of Plaintiffs' equal protection claims is that MaBSTOA salary *ranges* (*i.e.*, the minimum and maximum salaries) for certain job titles are five percent (5%) less than NYCTA salary *ranges* for allegedly similar job titles.  (*Romero II*, Compl. at ¶ 219.)  Plaintiffs thus have failed to identify an *actual* salary discrepancy between any specific individuals.[9]  Absent this specific evidence, Plaintiffs cannot establish that they each have a plausible equal protection claim and that they were "treated differently" to make a *prima facie* showing.  *Caracciola v. City of N.Y.*, No. 95 CIV. 3896 CSH, 1999 WL 144481, at *6 (S.D.N.Y. Mar. 15, 1999) (quoting *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989))

---

[8]    Equal protection claims generally involve an allegation of discrimination on the basis of a plaintiff's membership in a protected class, such as race, color, national origin, creed, or religion, as enumerated by the U.S. or New York State Constitutions.  *Galarza v. Monti*, 327 F. Supp. 3d 594, 601 (S.D.N.Y. 2018).  "Courts also recognize equal protection claims by individuals 'who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials.'"  *Id.* (citation omitted).  This second type of equal protection claim is known as a "class-of-one" claim, which is available only in limited circumstances. *See, infra,* Section II.C.

[9]    For instance, while Plaintiffs allege that MaBSTOA employees in the Staff Analyst II title may earn salaries ranging from $64,433 to $71,762, and NYCTA employees in the same title earn salaries ranging from $68,430 to $76,213, Plaintiffs fail to allege any specific salary discrepancy as between what, for example, Plaintiff T. Milerson actually earns or earned as a Staff Analyst II, and what any other allegedly "similarly situated" NYCTA employee earned in that same title.  (Compl. at ¶ 59.)  Clearly, if a MaBSTOA employee earns on the high-end of the MaBSTOA range and a NYCTA employee earns on the low-end of the NYCTA range, then the MaBSTOA employee would actually earn *more* than the NYCTA employee.

("'To put flesh upon the bare bones of [their] theory, [plaintiffs'] obligation [is] to identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently.'"); *Garanin v. NYC Hous. Pres. & Dev.*, No. 15 Civ. 3169 (AJN), 2016 WL 1690301, at *3 (S.D.N.Y. Mar. 30) (*citing Ruston v. Town Bd. of Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010)) ("In order to survive a motion to dismiss, a complaint pleading a 'class of one' equal protection claim must 'allege specific examples' of similarly situated individuals who have been treated differently."), *aff'd*, 673 F. App'x 122 (2d Cir. 2016).

Even if citing to different salary ranges was sufficient to state an equal protection claim—which it is not—there are manifold significant differences between Plaintiffs and NYCTA-employees, as observed by Judge Koeltl in *Romero I* and which Plaintiffs did not refute (either in *Romero I* or in the Complaint in *Romero II*) in any respect, rendering them **not** similarly situated:

(i)   NYCTA employees are subject to the restrictions and entitlements of NYCSL—Plaintiffs are not;[10]

(ii)  NYCTA employees are members of the New York City employees' retirement system—Plaintiffs are not:[11]

(iii) NYCTA employees (working in similar computer-related and staff analyst-related job titles as Plaintiffs) have a more than twenty-year history of collectively bargaining with NYCTA the terms and conditions of their employment through different labor unions —Plaintiffs were only recently organized by a different labor union in 2016 and 2017, respectively, into two separate bargaining units, and prior to that, Plaintiffs'

---

[10]   *See Matter of Clark v. Metro. Transp. Auth.*, 46 Misc. 3d 344, 348, 999 N.Y.S.2d 309, 313 (Sup. Ct. N.Y. Cnty. 2013); N.Y. Pub. Auth. Law § 1265(8) (MTA is not covered by the NYCSL); N.Y. Pub. Auth. Law § 1203-a(3)(b) (employees of MaBSTOA cannot become "for any purpose, employees of … [NYCTA] and shall not acquire civil service status…"); *see also Collins v. Manhattan & Bronx Surface Transit Operating Auth.*, 62 N.Y.2d 361, 371-72, 477 N.Y.S.2d 91, 96 (1984) (MaBSTOA employees are not covered by NYCSL); N.Y. Pub. Auth. Law § 1210(2) (NYCSL governs NYCTA employees).

[11]   *See* N.Y. Pub. Auth. Law § 1203-a(3)(b) (employees of MaBSTOA cannot become "for any purpose, employees of … [NYCTA] and shall not…become members of the New York City employees' retirement system…").

employment terms were determined unilaterally by MaBSTOA in the same manner as MaBSTOA's population of non-represented employees;[12] and

(iv)     Those represented-NYCTA employees received general wage increases pursuant to collective bargaining negotiations for at least the last twenty years—Plaintiffs, by sharp contrast, were subjected to a wage-freeze from 2009 through 2012.[13]

Consequently, Judge Koeltl held that "a rational person could believe that the salary ranges of MABSTOA employees and NYCTA employees differ because the employees of MABSTOA and of NYCTA were subject to two separate collective bargaining agreements." *Romero I*, 444 F. Supp. 3d at 592 (*citing Danese v. Knox*, 827 F. Supp. 185, 196 (S.D.N.Y. 1993)).

The sole new relevant allegations pled in *Romero II* concern the alleged "movement" or "transfer" of unspecified employees between MaBSTOA and NYCTA. (*Romero II*, Compl. at ¶¶ 220-22.)  However, these allegations do nothing to rebut the reality that Plaintiffs are not "*prima facie* identical" to the purported NYCTA-comparators, for the reasons stated above. Simply because employees were allegedly transferred does not change the reasons why MaBSTOA and NYCTA are ***not*** similarly situated.  Plaintiffs have thus failed to sufficiently plead that they were similarly situated to ***and*** treated differently than NYCTA employees and, as such, fail to establish their equal protection claims as a matter of law.  In short, Plaintiffs have nothing to correct the deficiencies in their pleadings in *Romero I* that were held to be insufficient to state a claim.

---

[12]     *See* Hurd Decl., Exs. 1-3.

[13]     *See* Hurd Decl., Exs.1 – 6E.

**C.      Defendants Have Demonstrated That There Is A Rational Basis For The Alleged Disparity In Salary Ranges.**

Plaintiffs' equal protection claims should be dismissed with prejudice for the additional reason, also held by Judge Koeltl in *Romero I*, that there is a rational basis for the alleged disparity in salary ranges. *See Romero I*, 444 F. Supp. 3d at 592.  Plaintiffs have brazenly not even attempted to plead facts that warrant the opposite conclusion—presumably, because they cannot.  The standard for dismissal of an equal protection claim differs from others, as courts are "not confined to the particular rational or irrational purposes that have been raised in the pleadings," and may even go outside the complaint to "hypothesize" a legitimate, rational governmental purpose.  *Progressive Credit Union v. Cty. of N.Y.,* 889 F.3d 40, 50 (2d Cir. 2018).[14]  Indeed, "[r]ational basis review is deferential," and "an equal protection challenge [to a government action] must be denied 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  *Weinstein v. Albright*, 261 F.3d 127, 140 (2d Cir. 2001) (citation omitted).  Further, "[r]ational basis review does not pass judgment upon the wisdom, fairness or logic" of the government actor's decisions, rather "it turns on whether there are 'plausible" reasons for [the government's] choices."  *Id.*  As Judge Koeltl held, Defendants comfortably satisfy this standard of review based on the facts alleged in the Complaint and public documents of which the Court was able to take notice.  *Romero I*, 444 F. Supp. 3d at 591-93.

The alleged five percent (5%) discrepancy between the MaBSTOA job titles' salary ranges and the NYCTA job titles' salary ranges, which lies at the heart of Plaintiffs' equal protection claims, is due in large measure to the fact that these groups of employees have

---

[14]      Judge Koeltl appropriately concluded that the standard established by the Second Circuit in *Progressive* is applicable to equal protection claims brought by a single plaintiff and a group of plaintiffs against public employers. *Romero*, 444 F. Supp. 3d at 591 n.9.

different histories of collective bargaining negotiations.  As explained above (*see supra* at 5, Factual Background, § II), Plaintiffs were not represented for collective bargaining purposes until 2016 and 2017, respectively, and did not reach initial contracts until 2017 and 2018, respectively.  Prior to those agreements, Plaintiffs received wage increases (or not) unilaterally by MaBSTOA, along with other non-represented employees.  On the other hand, the purportedly-comparator NYCTA employees (in allegedly similar job titles) have been represented by different labor unions for more than ***twenty years***, and those unions engaged in separate collective bargaining negotiations with NYCTA to determine those employees' wages and other conditions of employment.

As Judge Koeltl aptly concluded, "[t]he fact that separate collective bargaining agreements exist and that there is a difference in the history of union negotiations provides a rational basis for why the defendants paid employees at MABSTOA and NYCTA differently." *Romero I*, 444 F. Supp. 3d at 592; *see also Mullen v. City of Syracuse*, No. 5:10-CV-1110, 2013 WL 12084511, at *8 (N.D.N.Y. Aug. 5, 2013) (dismissing plaintiffs' equal protection claim because the differences between plaintiffs and their alleged comparators "[we]re the product of separate collective bargaining processes for the two groups.").  As Judge Koeltl acknowledged, now that Plaintiffs are represented, the proper avenue to seek redress of any salary grievances they may have is not in federal court, but through the collective bargaining process.  *Romero I*, 444 F. Supp. 3d at 592 ("[D]isagreements regarding the wages that plaintiffs in MABSTO and MTAHQ receive compared to the wages that employees of NYCTA receive, are matters better resolved between the plaintiffs' unions and the defendants in the collective bargaining process, rather than in federal court") (citing *Short v. Mary*, 617 F. App'x 410, 414 (6th Cir. 2015)).

Contributing to the alleged five percent (5%) salary discrepancy is that Plaintiffs, among other non-represented personnel, were subjected to a four-year wage freeze from 2009 through 2012, while represented employees, including NYCTA employees in allegedly similar titles, received contractually-mandated wage increases.  *See* Hurd Decl., Exs. 4 at 22; 5; 6A-E.  Courts in this Circuit have held that similar government wage freezes are rationally related to the legitimate purpose of governmental budget savings.  *See Flaherty v. Giambra*, 446 F. Supp. 2d 153, 162 (W.D.N.Y. 2006) ("the salary freeze as implemented was rationally related to a legitimate governmental purpose of budgetary savings and thus did not violate the Plaintiffs' equal protection rights."); *NYC Managerial Emps. Ass'n v. Dinkins*, 807 F. Supp. 958, 966 (S.D.N.Y. 1992) ("there can be no question that generating budget savings, particularly during a budget crisis, is a legitimate governmental purpose.").  The same conclusion is warranted here.

Defendants have thus demonstrated that the alleged five percent (5%) salary discrepancy is supported by rational bases—namely, as a result of different collective bargaining negotiations and a government-implemented wage freeze for cost-savings—which compel dismissal of Plaintiffs' equal protection claims, as it did in *Romero I*.  Critically, absolutely ***none*** of the new facts alleged in *Romero II* rebut Defendants' arguments nor refute Judge Koeltl's well-reasoned decision in *Romero I*, and Defendants respectfully submit that Plaintiffs' equal protection claims should be dismissed once again.

### D.    Plaintiffs' Equal Protection Claims Are Barred By Contract.

Since the gravamen of Plaintiffs' equal protection claims rests on whether the wages set forth in their respective collective bargaining agreements violate the federal and state constitutions, the claims cannot survive as a matter of law.  *See McCann v. City of Chicago*, 968 F.2d 635, 638 (7th Cir. 1992) ("Because a collective bargaining agreement is a contract, th[e]

particular expectation [at issue] has the sanction of the contracts clause, Art. I § 10 cl. 1, behind it. It cannot violate the equal protection clause to recognize elements under contract, which by definition differentiates signatories from bystanders."). This concept is particularly applicable here, where Plaintiffs' counsel negotiated on behalf of Plaintiffs' respective labor unions to create the disputed pay ranges, and now seeks to achieve in this lawsuit what he could not in collective bargaining. (*See Romero I*, Dkt. 37 at 2 n.1.) To allow these claims to stand would be an effective circumvention of the bargaining process for both public employers and unions. Defendants respectfully submit that the Court not countenance Plaintiffs' transparent end-run of the collective bargaining process.

### E. Plaintiffs' Equal Protection Claims Are Barred by Supreme Court Precedent.

Defendants submit, as they did in *Romero I*, that Plaintiffs' equal protections claims are barred as a threshold matter by the Supreme Court's decision in *Engquist v. Oregon Department of Agriculture*, which held that "class-of-one" claims against public employers are prohibited. 553 U.S. 591 (2008).

The "class-of-one" concept is not dictated based on whether there is one, or more than one plaintiff alleging discrimination. Instead, it deals with claims where the individual plaintiff—or group of plaintiffs—do not allege that they are being discriminated against due to membership in a protected group. The Supreme Court's prohibition on such claims in the public-employment context stems from the potential that:

> [if] plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis of a federal constitutional claim. Indeed, an allegation of arbitrary differential treatment could be made in nearly every instance of an assertedly wrongful employment action – not only hiring and firing decisions, but

any personnel action, such as promotions, salary, or work assignments – on the theory that other employees were not treated wrongfully.

*Id*. at 607-08.  The Supreme Court balanced the "traditional view of the core concern of the Equal Protection Clause as a shield against arbitrary classifications," and "unique considerations applicable when the government acts as employer as opposed to sovereign" in concluding that "the class-of-one theory of equal protection does not apply in the public employment context" because they lead to undue judicial interference in government employment decisions and practices.  *Id.* at 598.

Applying *Engquist*, the Second Circuit requires plaintiffs bringing public employment-related equal protection claims to assert membership in a protected category; if they do not, their claims are barred.  *See, e.g.*, *Miller v. N.Y.C. Dep't of Educ.*, 622 F. App'x 38, 39 (2d Cir. 2015) (summary order) (affirming dismissal of class-of-one claim, and noting that "[b]ecause the equal protection claim rests on a 'class of one theory' it fails."); *Conyers v. Rossides*, 558 F. 3d 137, 151-52 (2d Cir. 2009) (affirming dismissal of class-of-one claim against a public employer). New York courts have also dismissed class-of-one equal protection claims in light of *Engquist*. *See Bein v. Cnty. of Nassau*, 118 A.D.3d 650, 651, 987 N.Y.S.2d 416, 417 (2d Dep't 2014) (dismissing federal claim); *Knight v. Bratton*, 48 Misc. 3d 536, 541, 13 N.Y.S.3d 799, 803 (Sup. Ct. N.Y. Cnty. 2015) (dismissing state claim); *Matter of New Covenant Charter Sch. Educ. Faculty Ass'n v. Bd. of Trs. of State Univ. of N.Y.*, 30 Misc. 3d 1205(A), 958 N.Y.S.2d 647 (Sup. Ct. Albany Cnty. 2010) (dismissing state and federal claims).

Here, as in *Romero I*, Plaintiffs do not allege that they belong to a protected class or group, but contend they are members of an identifiable group of persons aggrieved by Defendants based solely on their job titles.  Judge Koeltl credited Plaintiffs' argument, holding that "[b]ecause the plaintiff's claims are made on behalf of a group of individuals, namely,

27

employees of MTA[] and MABSTOA, their claims are not barred." *Romero I,* 444 F. Supp. 3d at 591.  Defendants respectfully submit that this holding is flawed for two principal reasons.

*First*, whether the plaintiff is an individual or a group is not determinative of whether they can assert a "class-of-one" claim, as courts have dismissed such claims brought by groups of plaintiffs.  *See, e.g.*, *Bey v. City of N.Y.*, No. 99-cv-3873 (LMM) (RLE), 2009 WL 2924429 (S.D.N.Y. Sep. 9, 2009) (dismissing a ***group*** of Moorish-American former corrections officers' class-of-one claim in light of *Engquist*).  Moreover, in *Romero I*, Plaintiffs did not cite to nor did Judge Koeltl rely upon in his holding, any precedent standing for the proposition that a "class-of-one" claim can be successfully brought in federal court in the public-employment context, based solely on the assertion that the same group of employees, under myriad, disparate job titles— without being part of a protected group or class—are treated differently by their public employer.

*Second*, defining a group based on alleged wrongdoing in such a circular fashion as Plaintiffs have alleged here is likewise insufficient to estabish a claim under the equal protection clauses.  *See, e.g., Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.,* 682 F.3d 1298 (11th Cir. 2012) ("[T]he group must be identifiable by some common set of traits that reach beyond simply not having been selected for a benefit… the class for a class based claim for equal protection purposes cannot be defined solely as those persons who suffered at the hands of the supposed discriminator.")

In light of *Engquist*, Plaintiffs' claims amount to an improper "class-of-one" claim because Plaintiffs are challenging discretionary personnel administration—namely, the setting of employee salaries—of public employers.  *Engquist*, 553 U.S. at 594, 605; *see also Bertram v. Metro. Trans. Auth.*, No. 13 Civ. 338, 2014 WL 748933, at *9 (S.D.N.Y. Feb. 26, 2014) (citing *Conyers*, 558 F.3d at 151-52) (holding that where plaintiff alleged that the MTA violated the

28

Equal Protection Clause by disciplining him more harshly than other similarly-situated employees without a rational basis for the differential treatment, the court held that plaintiff's "class-of-one equal protection claim must fail, because it challenges the actions of a public employer, [MTA]").  Defendants respectfully disagree with Judge Koeltl's ruling in *Romero I* on this issue, and submit that Plaintiffs' challenge to Defendants' discretionary personnel administration falls squarely within the purview of *Engquist's* prohibition.  Accordingly, Plaintiffs' equal protection claims are barred as a matter of law for this additional reason.

## III.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

Given the posture of this case, where the Complaint in *Romero II* represents the ***fourth*** iteration of the same pleading—Plaintiffs' claims should be dismissed with prejudice.  Indeed, Plaintiffs were undeniably on notice of their pleading deficiencies by virtue of *Romero I* and have demonstrated by way of the insignificant additions to this Complaint—after many months of opportunity to remedy their deficiencies—that further leave to amend would be futile and should not be permitted.

In similar circumstances, Courts have routinely dismissed Plaintiffs' claims with prejudice, and this Court should do so here.  *See, e.g.*, *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28-29 (2d Cir. 2016) (affirming district court's denial of plaintiff's motion for leave to amend to file a third amended complaint when plaintiff did not "proffer or describe a proposed new pleading to cure the deficiencies"); *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment … Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."); *Feinberg v. Apple, Inc.*, 2016 WL 4371746, at *5 (S.D.N.Y. Aug. 10, 2016) (Leave

to amend is properly denied where "it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim."); *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 569 n.5 (S.D.N.Y. 2012) ("[A] dismissal with prejudice is generally appropriate where a court puts a plaintiff on notice of a complaint's deficiencies and the plaintiff fails to correct those deficiencies after amendment.").

## **CONCLUSION**

For these reasons, the Court should dismiss Plaintiffs' claims in their entirety with prejudice.

Dated:  June 25, 2021

<div style="margin-left:50%">

Respectfully submitted,

*/s/ Steven D. Hurd*

**PROSKAUER ROSE LLP**
Steven D. Hurd
Joshua S. Fox
Eleven Times Square
New York, New York 10036
shurd@proskauer.com
jfox@proskauer.com
Tel:   (212) 969-3000
Fax:  (212) 969-2900
*Attorneys for Defendants Manhattan and Bronx Surface Transit Operating Authority, MTA Headquarters (a/k/a MTA Information Technology) and Metropolitan Transportation Authority*

</div>

30

## <u>CERTIFICATE OF SERVICE</u>

I, Steven D. Hurd., Esq., certify, that on this 25th day of June 2021, the foregoing Notice of Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended and Class Action Complaint; Declaration of Steven D. Hurd and accompanying exhibits; and Defendants' Memorandum of Law in Support of Their Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended and Class Action Complaint were filed using the Court's ECF system, thereby causing the same to be served on all counsel of record.


Dated:   June 25, 2021
         New York, New York

By:      */s/ Steven D. Hurd*                        

         Steven D. Hurd
         **PROSKAUER ROSE LLP**
         Eleven Times Square
         New York, NY  10036-8299
         Tel:  (212) 969-3000
         Fax:  (212) 969.2900
         shurd@proskauer.com
         *Attorneys for Defendants*