UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
EDWIN ROMERO, *et al.*, on behalf of a class of                   :
employees employed with the Manhattan and Bronx                   :
Surface Transit Operating Authority, MTA Headquarters,            :
and Metropolitan Transportation Authority                         :
                                                                  :          21-cv-4951 (LJL)
                                           Plaintiffs,            :
                                                                  :          OPINION AND ORDER
             -v-                                                  :
                                                                  :
MANHATTAN and BRONX SURFACE TRANSIT                               :
OPERATING AUTHORITY, MTA HEADQUARTERS                             :
(a/k/a MTA INFORMATION TECHNOLOGY) and                            :
METROPOLITAN TRANSPORTATION AUTHORITY,                            :
                                                                  :
                                           Defendants.            :
                                                                  :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__3/2/2022__

LEWIS J. LIMAN, United States District Judge:

Plaintiffs Edwin Romero, *et al.* ("Plaintiffs") bring this action on behalf of a class of

employees employed with subsidiary entities of the defendant Metropolitan Transportation

Authority ("MTA"): the Manhattan and Bronx Surface Transit Operating Authority

("MABSTOA") and the MTA Headquarters/MTA Information Technology ("MTAHQ" and

together with MTA and MABSTOA, "Defendants").  Plaintiffs bring claims for violations of

overtime provisions of the Fair Labor Standards Act, 29 U.S.C § 201, *et seq.* ("FLSA").  They

also allege violations of the equal protection clauses of the Fourteenth Amendment of the United

States Constitution and the New York State Constitution.  Defendants move to dismiss the

complaint, Dkt. No. 1-2 ("Complaint" or "Compl."), pursuant to Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim upon which relief can be granted.  Dkt. No. 13.

For the following reasons, the motion to dismiss is granted.

**BACKGROUND**

This case arises from Plaintiffs' employment at MABSTOA and MTAHQ over various time periods.  For the purposes of this motion, the Court accepts as true the well-pleaded allegations of the Complaint.  The Complaint alleges as follows.

MABSTOA is a New York State public authority that was created in 1962 to take over two bankrupt private bus companies in the Bronx and Manhattan.  Compl. ¶ 204.  MTAHQ is a public benefit corporation that is alleged to be either a wholly owned subsidiary of the MTA or the name by which the MTA does business created to handle administrative functions of the MTA.  *Id.* ¶ 205.  MABSTOA and MTAHQ are two subsidiaries of MTA, a New York State authority created to coordinate transportation needs throughout the state.  *Id.* ¶ 206.  Plaintiffs worked in various positions for MABSTOA or MTAHQ including, but not limited to, Computer Specialist, Computer Associate, Telecom Associate, Assistant Budget Chief, Associate Staff Analyst, and Telecom Specialist. *Id.* ¶¶ 8–201.

During various weeks in the three years prior to January 24, 2019,[1] Plaintiffs were required to work in excess of forty hours per week, either by working more than eight hours in a given day during a five-day work week, or by working during the weekend or on a day scheduled as an off day.  *Id.* ¶ 212.  During the weeks that this occurred, Defendants paid Plaintiffs "straight time," for all hours worked, instead of an overtime rate of one-and-a-half times their pay for the hours worked above forty per week.  *Id.* ¶ 213.  For example, during the weeks of

---

[1] As discussed in Procedural History *infra*, Plaintiffs first filed an action in the Southern District of New York on January 24, 2019, case no. 19-cv-0694, which was dismissed by the Honorable John G. Koeltl in *Romero v. Metro. Transp. Auth.*, 444 F. Supp. 3d 583 (S.D.N.Y. 2020) ("*Romero I*").  In the Complaint, Plaintiffs allege that violations of FLSA occurred "within the three years prior to the filing of the Federal Action."  Compl. ¶ 212.  The Complaint defines the "Federal Action" as the action before Judge Koeltl.  *Id.* ¶ 4 (citing case number 19-cv-0694). Therefore, the conduct in the present action is alleged to have occurred in the three years prior to January 24, 2019.

November 26, 2016, December 3, 2016, November 12, 2016, and November 5, 2016, Plaintiff Romero was required to work twelve, eleven, twelve, and nine hours, respectively, above forty hours without overtime pay. *Id.* ¶ 214. Plaintiff Wellington was required to work more than forty hours during the weeks of January 31, 2016, February 6, 2016, May 7, 2016, and May 14, 2016 and was paid straight time for all hours worked. *Id.* ¶ 215. Plaintiffs also allege that they cannot determine precisely which weeks they worked overtime without overtime pay without access to the Defendants' time records. *Id.* ¶ 216. Some plaintiffs began to receive payment at the proper overtime rate in 2017 or 2018 as a result of collective bargaining carried out by their union. *Id.* ¶ 225.

The New York City Transit Authority ("NYCTA") is another subsidiary of MTA. *Id.* ¶ 1. Defendants MABSTOA and MTAHQ have employees who do substantially similar work and have the same or substantially similar titles to individuals employed by NYCTA. *Id.* ¶ 217.[2] The employees assigned to MABSTOA or MTAHQ payroll have been paid a lower salary than NYCTA employees doing substantially the same work. *Id.* Defendants used "different minimum and maximum pay rates for employees doing exactly the same jobs in the same titles" depending on the MTA subsidiary to which they were assigned. *Id.* ¶ 218. For example, new employees have been: hired into MTAHQ, given the same responsibilities as NYCTA and MABSTOA employees, paid at the lower MABSTOA rate, and denied the right to participate in any pension plan. *Id.* Employees hired into NYCTA make about 5% more per year than similarly situated employees working for MABSTOA. *Id.* ¶ 219. Defendants have also moved employees from NYCTA payroll to MABSTOA or MTAHQ payroll (which would presumably

---

[2] The Complaint refers to NYCTA as "Defendant NYC Transit Authority" and "Defendant NYCTA," but it does not name this entity as a defendant in the action. *See id.* ¶¶ 217, 220; *see generally id.*

3

have the effect of decreasing their pay rate) without changing the work assigned to the employee. *Id.* ¶ 220.

Plaintiffs allege that Defendants have willfully and in bad faith failed to pay overtime pay for hours worked in excess of forty hours per week in violation of the FLSA, 29 U.S.C. § 207(a)(1). *Id.* ¶¶ 227–228. Plaintiffs also allege that Defendants engaged in an unequal compensation scheme in paying Plaintiffs a lesser rate because they worked for MABSTOA or MTAHQ rather than for NYCTA, even though employees of all three agencies performed substantially the same work. *Id.* ¶¶ 233–234. They contend that the unequal compensation scheme serves no legitimate governmental purpose and therefore violates the Fourteenth Amendment of the United States Constitution and article I, section 11 of the New York State Constitution. *Id.* ¶¶ 234, 238.

## PROCEDURAL HISTORY

On January 24, 2019, Plaintiffs commenced an action in the United States District Court for the Southern District of New York against Defendants, alleging violations of the FLSA; New York Civil Service Law ("NYCSL"); New York Codes, Rules and Regulations ("NYCRR"); and equal protection clauses of the Fourteenth Amendment to the United States Constitution and the New York State Constitution.[3] The FLSA claims were brought as a collective action on behalf of all those similarly situated, and the NYCSL, NYCRR, and equal protection claims were brought on behalf of a putative class pursuant to Federal Rule of Civil Procedure 23. Plaintiffs twice amended their complaint, and, on July 19, 2019, Defendants moved to dismiss that complaint. *Romero I*, ECF No. 43.

---

[3] The initial complaint was brought against MABSTOA, MTA Bus Company, and MTAHQ. *Romero I*, ECF No. 6. The second amended complaint was brought against MABSTOA, MTAHQ, and MTA. *Id.*, ECF No. 41. The parties in the instant action are the same as those in *Romero I*. Dkt. No. 15-11.

On March 12, 2020, Judge Koeltl dismissed the FLSA claim and both equal protection claims without prejudice and dismissed the NYCSL and NYCRR claims with prejudice.  *Romero I*, 444 F. Supp. 3d at 592.  As relevant here, he dismissed the FLSA claim on the ground that the plaintiffs' allegations failed to state a claim for relief because they merely "repeat[ed] the language of the statute and [were] too general to put the defendants on notice of the alleged violations."  *Id.* at 588.  Judge Koeltl dismissed both the state and federal equal protection claims because plaintiffs failed to sufficiently plead that they were similarly situated to NYCTA employees and that no rational basis existed for the differences in salary ranges.  *Id.* at 591–92.

On April 13, 2020, Plaintiffs filed a Notice of Appeal with the U.S. Court of Appeals for the Second Circuit.  *Romero I*, ECF No. 69.  After Plaintiffs failed to file a brief by the deadline, the Second Circuit dismissed the appeal, and the mandate issued on August 18, 2020.  *Id.*, ECF No. 71.

On May 4, 2021, Plaintiffs commenced the present action against the same defendants as in *Romero I* in the Supreme Court for the State of New York, [4] County of New York alleging violations of FLSA and the equal protection clauses of the Fourteenth Amendment to the United States Constitution and article I, section 11 of the New York State Constitution.  Defendants filed a notice of removal on June 4, 2021, pursuant to 28 U.S.C. § 1441(a).  Dkt. No. 1.  Defendants filed a Related Case Statement asserting that this action is related to *Romero I* and requesting that the matter be assigned to Judge Koeltl.  Dkt. No. 3.  It was initially assigned to Judge Katherine Polk Failla and then reassigned to the undersigned.

---

[4] The defendants in the instant action are the same as those in the second amended complaint, *Romero I*, ECF No. 41, except that in this action, Plaintiffs include that MTAHQ is also known as "MTA Information Technology."  Dkt. No. 15-11.

Defendants filed a motion to dismiss the Complaint on June 25, 2021.  Dkt. No. 13.

Plaintiffs filed their memorandum in opposition on August 3, 2021.  Dkt. No. 23.  Defendants

submitted a reply on August 20, 2021.  Dkt. No. 24.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a

complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 554, 570 (2007)).  A complaint must offer more than "labels and

conclusions," "a formulaic recitation of the elements of a cause of action," or "naked

assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*,

550 U.S. at 555, 557.

The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the alleged misconduct."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint

states a plausible claim for relief will . . . be a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the

plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery

will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. 556; *see also Matrixx

Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

Defendants move to dismiss Plaintiffs' FLSA claims, arguing that (1) Plaintiffs' claims

are barred under the statute of limitations, and (2) Plaintiffs have failed to state a claim for

unpaid overtime.  Defendants move to dismiss the federal and state equal protection claims on

the basis that (1) Plaintiffs failed to establish a *prima facie* claim of unequal pay, (2) Plaintiffs

6

have not sufficiently pleaded that they were treated differently from and are "similarly situated" to NYCTA employees, (3) there is a rational basis for the alleged disparity in salary ranges, (4) the claims are barred by contract, and (5) the claims are barred by Supreme Court precedent.

## I.  Plaintiffs' FLSA Claims are Barred by the Statute of Limitations

Defendants argue that Plaintiffs' FLSA claims are barred by the statute of limitations.  A district court "may dismiss a claim on statute-of-limitations grounds at the pleading stage 'if [the] complaint clearly shows the claim is out of time.'"  *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (alteration in original) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).  A plaintiff must bring a FLSA claim within "two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255.  For statute-of-limitations purposes, a FLSA claim is considered to be commenced as to any individual plaintiff either:

> (a) On the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>
> (b) If such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256.

Plaintiffs allege that the conduct took place "[d]uring numerous weeks within the three years prior to the filing of the Federal Action."  Compl. ¶ 212.[5]  The Federal Action was filed on

---

[5] Plaintiffs also allege that "[w]ithin the three years prior to filing of the Federal Action and continuing to date . . . each Plaintiff's job duties have included work not exempt from the requirements of" FLSA, *id.* ¶ 211, but they notably do not allege that they were required to work overtime without the proper pay for "the three years prior to filing of the Federal Action *and continuing to date*," *id.* (emphasis added).  They allege only that "[d]uring numerous weeks *within the three years prior* to [the] filing of the Federal Action," *id.* ¶ 212 (emphasis added),

January 24, 2019.  Plaintiffs also allege that "[s]ome plaintiffs began to receive overtime pay in 2017 or 2018 as a result of collective bargaining carried out by their union."  *Id.* ¶ 225.  The present action was filed on May 4, 2021.  The plaintiffs who began to receive overtime pay in 2017 or 2018 thus filed their FLSA claims approximately three to four years after the last alleged violations occurred, and thus at least three to four years after the cause of action accrued, and the claims are time-barred.  As for the remainder of the plaintiffs, because each plaintiff is named as a party and the Complaint represents that "[a]ll Plaintiffs have consented to becoming plaintiffs in the FLSA collective action," Compl. ¶ 202, the commencement date for such plaintiffs for statute of limitations purposes is the filing date—January 24, 2019, *see* 29 U.S.C. § 256; *see also Ruiz v. Truffa Pizzeria & Wine Room Corp.*, 2021 WL 568249, at *5 (S.D.N.Y. Feb. 15, 2021); *Cortese v. Skanska Koch, Inc.*, 2021 WL 429971, at *13 (S.D.N.Y. Feb. 8, 2021).  Accordingly, the instant action was commenced over two years after the cause of action accrued.

For the longer three-year statute of limitations to apply, "a plaintiff must allege facts at the pleadings stage that give rise to a plausible inference that a defendant willfully violated the FLSA."  *Whiteside*, 995 F.3d at 320.  "The mere allegation of willfulness is insufficient to allow an FLSA plaintiff to obtain the benefit of the three-year exception at the pleadings stage."  *Id.* at 323.  To state a plausible inference, the plaintiff must "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged."  *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556).  Conclusory allegations are "not entitled to be assumed true."  *Iqbal*, 556 U.S. at 681.  To be a willful violation of FLSA, the employer must have "either kn[own] or show[n] reckless disregard for the matter of whether

---

Plaintiffs were required to work in excess of 40 hours per week and did not receive overtime pay, *id.* ¶¶ 212–13.

its conduct was prohibited by the Act." *Whiteside*, 995 F.3d at 324 (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009)).

Here, Plaintiffs merely allege that "Defendants' violations of the FLSA have been done in a willful and bad-faith manner." Compl. ¶ 228. That allegation is conclusory. There are no facts suggesting that the Defendants "acted in any manner suggesting an awareness that their actions violated or could violate the FLSA." *Whiteside*, 995 F.3d at 324. Because a conclusory allegation that a defendant acted willfully, without factual support to back up that allegation, *Iqbal*, 556 U.S. at 681, is insufficient to entitle Plaintiffs to the longer limitations period, Plaintiffs' claims that were more than two years old at the time of the filing of the instant action are time-barred. *See Whiteside*, 995 F.3d at 324–25; *Estrada v. Therapy PLLC*, 2021 WL 4427068, at *2 n.3 (S.D.N.Y. Sept. 27, 2021).

Plaintiffs contend that the FLSA claim is not barred by the statute of limitations because of New York State Executive Order 202.67 (the "Executive Order"). N.Y. Exec. Order No. 202.67 (Oct. 4, 2020). The Executive Order, issued on October 4, 2020, was the culmination of a series of executive orders issued by Governor Cuomo during the COVID-19 pandemic all entitled "Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency." *See* N.Y. Gov. Exec. Order Nos. 202.8, 202.14, 202.28, 202.38, 202.67 (2020). It states in relevant part:

> The suspension . . . that tolled any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding *as prescribed by the procedural laws of the state*, including but not limited to the criminal procedure law, the family court act, the civil practice law and rules, the court of claims act, the surrogate's court procedure act, and the uniform court acts, or by any statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby continued . . . provided however, for any civil case, such suspension is only effective until November 3, 2020, and after such date any such time limit will no longer be tolled.

N.Y. Exec. Order No. 202.67 (emphasis added).  This Court has previously held that the various executive orders issued throughout the COVID-19 pandemic "did not purport to toll time periods prescribed by federal law . . . and they were not justified by any limitation of access to the federal courts."  *O'Rourke v. Ehsan Food Corp.*, 2020 WL 6894663, at *3 (S.D.N.Y. Nov. 24, 2020); *see also Esqueda v. NYU Langone Hosps.*, 2021 WL 4340731, at *2 (S.D.N.Y. Sept. 23, 2021) (implying that because plaintiff's primary cause of action was asserted under federal law, the New York Executive Order did not apply).

Plaintiffs cite to *Citi Connect, LLC v. Local Union No. 3, International Brotherhood of Electrical Workers, AFL-CIO*, 2020 WL 5940143 (S.D.N.Y. Oct. 7, 2020), in support of their argument that the statute of limitations for their FLSA claim was tolled by the Executive Order. In that case, Judge McMahon found that one of the New York COVID-19 executive orders tolled the statute of limitations for a federal claim that had borrowed the state statute of limitations.  *Id.* at *4.  Judge McMahon relied on *Weslowski v. Zugibe*, 14 F. Supp. 3d 295 (S.D.N.Y. 2014), where the court declined to apply a New York executive order suspending state statutes of limitation in response to Superstorm Sandy because Congress had enacted a federal statute of limitations for the claims at issue.  *Weslowski*, 14 F. Supp. 3d at 307.  Judge McMahon contrasted the facts in *Citi Connect* with those in *Weslowski* to conclude that she must "borrow the . . . state statute of limitations" because Congress had not enacted a federal statute of limitations for the claim at issue.  *Citi Connect*, 2020 WL 5940143 at *4.  Because Judge McMahon borrowed the state statute of limitations, she found that the state executive order applied to toll the statute of limitations.  *Id.*

As this Court has said: "Governor Cuomo's order does not purport to toll, nor could it, the time periods established by federal law."  *O'Rourke*, 2020 WL 6894663, at *4.  The

executive orders "were not justified by any limitation of access to the federal courts." *Id.* at 3. While Plaintiffs' claims were filed in state court, Plaintiffs had the option to file this action in federal court pursuant to 28 U.S.C. §§ 1331, 1337, as they did in *Romero I*.  The case was properly removed to federal court.  Plaintiffs cannot merely file claims asserted under federal law and governed by a federal statute of limitations in state court to take advantage of a New York State executive order that purported to toll any statute of limitations "prescribed by the procedural laws of the state."  N.Y. Exec. Order No. 202.67.  Plaintiffs' FLSA claim is asserted under a federal law that does not borrow New York's statute of limitations; rather, Congress enacted a federal statute of limitations for such claims as laid out in 29 U.S.C. § 255.  The Executive Order does not apply to Plaintiffs' FLSA claim, and the claim is thus barred by the statute of limitations.  Because the FLSA claim is barred by the statute of limitations, it will be dismissed with prejudice.  *See Rodolfo Tecocoatzi-Ortiz v. Just Salad LLC*, 2022 WL 596831, at *6 (S.D.N.Y. Feb. 25, 2022) (dismissing FLSA claims with prejudice because they were time-barred); *Bonaparte v. Tri-State Biodiesel, LLC*, 2018 WL 4538895 (S.D.N.Y. Sept. 20, 2018) (same).  The Court need not reach the issue of whether Plaintiffs pleaded sufficient facts to establish a FLSA claim.

## II.   Plaintiff's Equal Protection Claims are Barred by the Law of the Case[6]

Plaintiffs' remaining claims are equal protection claims under the Fourteenth Amendment to the United States Constitution and article I, section 11 of the New York State Constitution. Plaintiffs allege that they were paid at a lesser rate because they work for MABSTOA or MTAHQ rather than for NYCTA despite the fact that employees in each of these agencies

---

[6] The Court does not analyze whether the equal protection claims are barred by collateral estoppel because that is an affirmative defense that must be raised by the defendant.  *See* Fed. R. Civ. P. 8(c); *Kithen v. Brown*, 481 F.3d 89, 104 (2d Cir. 2007).  Here, Defendants did not raise issue preclusion in their briefs.

perform substantially the same work.  Compl. ¶ 233.  They claim that this "unequal compensation scheme serves no legitimate governmental purpose" and therefore violates the United States and New York Constitutions.  *Id.* ¶¶ 234, 238.

The allegations are identical to those in the case previously filed before Judge Koeltl and which he dismissed.  *Romero I*, 444 F. Supp. 3d at 592.  As indicated earlier, in dismissing the equal protection claims, Judge Koeltl considered MABSTOA and NYCTA's collective bargaining agreements and concluded that "plaintiffs fail[ed] to meet the exacting standards required to show that they are similarly situated to employees of NYCTA" and "cannot show that no rational basis exists for the differences in salary ranges."  *Id.* at 591–92.  After Judge Koeltl issued his decision, Plaintiffs abandoned their appeal, only to refile a near-identical action in state court.

The Court concludes that the claims are foreclosed under the law-of-the-case doctrine.  The doctrine "holds 'that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' . . . unless 'cogent' and 'compelling' reasons militate otherwise."  *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (first quoting *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991), and then quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).  Cogent and compelling reasons include "an intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'"  *Johnson v. Holder*, 564 F.3d 95, 99–100 (2d Cir. 2009) (quoting *Quintieri*, 306 F.3d at 1230).  "'[C]ourts are understandably reluctant to reopen a ruling once made,' especially 'when one judge or court is asked to consider the ruling of a different judge or court.'"  *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 94 (2d Cir. 2005) (quoting 18B Charles Allan Wright, Arthur R. Miller & Edward H. Cooper,

*Federal Practice and Procedure* § 4478, at 637 (2d ed. 2002)).  "The constraint is a matter of discretion."  *Id.*

The doctrine is "driven by considerations of fairness to the parties, judicial economy, and the social interest in finality."  *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009).  "While the doctrine is ordinarily applied in later stages of the same lawsuit, it also has application to different lawsuits between the same parties."  *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991); *see also* 18B Charles Allan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478.4 (3d ed. 2021) (explaining that the law-of-the case doctrine applies where a "second action is filed after the first action is dismissed without prejudice."). "Where a party presents the same allegations or factual record previously deemed deficient by a court, the law of the case doctrine forecloses reconsideration of the court's conclusion."  *Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*, 2021 WL 535485, at *4 (S.D.N.Y. Feb. 12, 2021) (denying plaintiffs' application for a preliminary injunction on law-of-the-case grounds after the state court dismissed the application without prejudice and defendants subsequently removed the action to federal court).

"[T]he jurisprudence regarding the law of the case doctrine in [the Second] Circuit establishes that a subsequent attempt to replead the same legal claim under the same or similar facts would be precluded by the law of the case doctrine."  *United States for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.*, 2020 WL 2530180, at *8 (S.D.N.Y. May 19, 2020); *see also Ammar Textile (Pvt) Ltd. v. Contitrade Servs. Corp.*, 1994 WL 115993, at *3 (S.D.N.Y. Mar. 30, 1994) (applying the law-of-the-case doctrine where "[t]he present complaint reasserts the same claim, setting forth essentially the same facts").  But "[w]hen a motion is denied without prejudice, the law of the case doctrine does not bar consideration of a renewed

13

motion where the movant presents new facts with arguments based on those facts." *Hodnett*, 2021 WL 535485, at *4 (citing *Massimino v. Fidelity Workplace Servs., LLC*, 697 Fed. App'x 85, 86 (2d Cir. 2017) (summary order) (concluding that "[t]he law-of-the-case doctrine did not bar the district court from reconsidering whether [the plaintiff] had statutory standing" where the district court first denied a motion to dismiss and then subsequently granted it because the defendant submitted more evidence after the denial), and *Bricklayers & Allied Craftsmen, Local Union No. 44 v. Corbetta Constr. Co., Inc.*, 511 F. Supp 1386, 1390 (S.D.N.Y. 1981) (declining to apply the law of the case doctrine where the "motion to dismiss was denied without prejudice to its renewal after a factual hearing")).

There are no "cogent" and "compelling" reasons for the Court to depart from Judge Koeltl's opinion in *Romero I* dismissing Plaintiffs' equal protection claims—the only remaining claims given the Court's dismissal of the FLSA claims.

Judge Koeltl's decision was well-reasoned.  To state an equal protection claim where the plaintiff does not allege membership in a protected class, "the plaintiff must plausibly allege that he or she has been intentionally treated differently from others similarly situated and no rational basis exists for that different treatment." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). The equal protection clause of the New York State Constitution "was intended to afford coverage as broad as that provided by the Fourteenth Amendment to the United States Constitution." *Brown v. State*, 674 N.E.2d 1129, 1140 (N.Y. 1996) (citing *Dorsey v. Stuyvesant Town Corp.*, 87 N.E.2d 541, 548 (N.Y. 1949) (concluding that the equal protection analysis is "precisely the same under the State Constitution as it is under the Federal Constitution")).  Therefore, Judge Koeltl's equal protection analysis applies to both the federal and state equal protection claims.

Judge Koeltl concluded that while Supreme Court precedent did not bar Plaintiffs' equal protection claims, the claims were not sufficiently pleaded.  He stated that "plaintiffs fail[ed] to meet the exacting standards required to show that they are similarly situated to employees of NYCTA."  *Romero I*, 444 F. Supp. 3d at 591.  In coming to that conclusion, Judge Koeltl considered the fact that MABSTOA and NYCTA employees had different collective bargaining agreements and explained that "[a] rational person could believe that the salary ranges of MASTOA employees and NYCTA employees differ because the employees of MABSTOA and NYCTA were subject to two separate collective bargaining agreements."  *Id.* at 592. Additionally, because employees of both subsidiaries have different histories of unionizing and therefore negotiating, "plaintiffs [] cannot show that no rational basis exists for the differences in salary ranges."  *Id.* at 592.

In the instant action, Plaintiffs allege few additional facts to attempt to meet the "exacting standard," *id.* at 591, required to show that they are similarly situated to NYCTA employees and to show that there is no rational basis for the difference in salaries.  They allege: "Defendants have moved employees from Defendant NYCTA payroll to Defendant MABSTOA payroll or Defendant MTAHQ payroll into a commensurate title and without changing the work assigned to the employee" and that there is no rational basis for this.  Compl. ¶¶ 220–222.  This additional allegation is irrelevant to Judge Koeltl's conclusion that a rational person could believe "that the salary ranges of MABSTOA and NYCTA employees differ because [the employees] were subject to two separate collective bargaining agreements."  *Romero I*, 444 F. Supp. 3d at 592. Thus, even considering this additional allegation, Judge Koeltl's analysis remains persuasive. The collective bargaining agreements provide a compelling reason why the MABSTOA plaintiffs are not similarly situated to NYCTA employees and cannot show that there is no

rational basis for the difference in salaries.  As Judge Koeltl concluded, "disagreements regarding the wages that plaintiffs in MABSTOA and MTAHQ receive, compared to the wages that employees of NYCTA receive, are matters better resolved between the plaintiffs' unions and the defendants in the collective bargaining process, rather than in federal courts." *Id.* at 591 (citations omitted).  The Court agrees.

At various points in their brief, Plaintiffs argue that the Court should not follow Judge Koeltl's opinion in *Romero I.*  However, they do not present any new material facts, present any new law, or make any new arguments that Judge Koeltl did not consider.  The Court does not disagree with Judge Koeltl.  Even if it did, were the Court to accept Plaintiffs' invitation in this case to reach a different result than he did simply because Plaintiffs chose to abandon their prior case and to file a new case rather than to either prosecute their appeal or seek to file an amended complaint in the earlier case, there would be nothing to prevent any other plaintiff from avoiding an unfavorable result and a judge believed to be unsympathetic by the same expedient.  Such a result would invite judge-shopping and contravene the policy behind the law of the case doctrine.

Plaintiffs' federal and state equal protection claims are dismissed with prejudice.  *See In re Merrill Lynch Auction Rate Sec. Litig.*, 2012 WL 1994707, at *7 (S.D.N.Y. June 4, 2012) ("Applying the law of the case, the Court does not therefore reach the merits of Plaintiff's remaining claim and it must be dismissed with prejudice."); *Victor Lalli Enterprises, Inc. v. Big Red Apple, Inc.*, 1990 WL 129974, at *2 (E.D.N.Y. Aug. 28, 1990) (denying a motion for summary judgment with prejudice where a judge's denial of the motion in an earlier action served as the law of the case).

16

**CONCLUSION**

The motion to dismiss is GRANTED, and the claims are dismissed with prejudice.

The Clerk of Court is respectfully directed to close Dkt. No. 13 and to close the case.


SO ORDERED.


Dated: March 2, 2022
      New York, New York

                                       LEWIS J. LIMAN
                            United States District Judge